Dr. Tom W. Kimbrell, Commissioner Arkansas Department of Education Four Capitol Mall Little Rock, AR 72201-1019
Dear Commissioner Kimbrell:
I am writing in response to your request for my opinion on the following questions relating to the calculation and distribution of school foundation funding:
 1. Does A.C.A. 6-20-2305 guarantee that a school district will receive the sum of 98% of the uniform rate of tax multiplied by the property assessment of the school district, or does A.C.A. 6-20-2305 guarantee that a school district will receive the foundation funding amount listed in A.C.A. 6-20-2305(a)(2), multiplied by the school district's average daily membership for the previous school year?
 2. If a school district is guaranteed the sum of 98% of the uniform rate of tax multiplied by the property assessment: a) Does this guarantee extend beyond the foundation funding amount pursuant to A.C.A. 6-20-2305(a)(2) multiplied by the school district's average daily membership for the previous school year? b) For a school district in which the sum of 98% of the uniform rate of tax multiplied by the property assessment (with or without miscellaneous funds included) exceeds the per student foundation funding amount pursuant to A.C.A. 6-20-2305(a)(2), and has therefore not received state foundation funding aid as computed pursuant to A.C.A. 6-20-2305(a)(1)(A), if the district's net *Page 2 
revenues exceed the sum of 98% of the uniform rate of tax multiplied by the property assessment, is the Arkansas Department of Education entitled to recoup from the school district the difference between the net revenues of the school district and the sum of 98% of the uniform rate of tax multiplied by the property assessment?
 3. If A.C.A. 6-20-2305 guarantees that a school district will receive the foundation funding amount pursuant to A.C.A. 6-20-2305(a)(2) multiplied by the average daily membership for the previous school year, is a school district required to return to the Arkansas Department of Education the local revenue in excess of the foundation funding amount pursuant to A.C.A. 6-20-2305(a)(2) generated by the uniform rate of tax plus miscellaneous funds?
RESPONSE
With respect to your first question, I believe the state is obliged to provide a school district only the foundation funding amount calculated pursuant to the formula set forth in A.C.A. § 6-20-2305(a)(2). With respect to your second question, in my opinion, a school district is not guaranteed to receive 98% of the revenues realized from imposition of the uniform rate of tax (the "URT") pursuant to Ark. Const. amend. 74. The district is guaranteed only to receive the amount calculated pursuant to the foundation funding formula. The state is constitutionally obliged to distribute to "the school districts," Ark. Const art. 14, § 3(b)(3), any URT revenues in excess of the foundation funding amount due the district generating the revenues — a plural formulation that I read as meaning that the Department of Education may redistribute this excess to whatever district(s) it considers in need of additional funding. In light of these conclusions, I believe the answer to your third question is "yes."
Question 1: Does A.C.A. 6-20-2305 guarantee that aschool district will receive the sum of 98% of the uniform rate oftax multiplied by the property assessment of the school district, ordoes A.C.A. 6-20-2305 guarantee that a school district will receivethe foundation funding amount listed in A.C.A. 6-20-2305(a)(2),multiplied by the school district's average daily membership for theprevious school year? *Page 3 
In my opinion, a school district is entitled to receive from the state the foundation funding amount listed in A.C.A. § 6-20-2305(a)(2), irrespective of whether the revenues collected pursuant to A.C.A. § 6-20-2305(a)(1)(A) fall short of, equal or exceed this amount. The foundation funding calculated according to the formula set forth in subsection (a)(2) of the statute is the amount determined by the legislature to be the minimum guaranteed under Ark. Const. art. 14, § 1, which obliges the state to fund each district to the point where each student will have access to "a general, suitable and efficient system of free public schools." I consider it immaterial whether the revenues realized from the 25-mill uniform rate of tax (the "URT") imposed pursuant to Ark. Const. amend. 74 fall short of, equal or exceed the foundation funding amount. The revenues realized from the URT are state funds that constitute a credit against the state's obligation to defray the foundation funding amount. See Lake ViewSchool District No. 25 v. Huckabee,351 Ark. 31, 78-79, 91 S.W.3d 472 (2002) (stressing that the URT is a state, not merely a local, obligation serving the end of providing an adequate education); accord Ops. Att'y Gen. No. 2008-168, 2004-359.
The uniform rate of tax (the "URT") is the 25-mill minimum property tax mandated in Ark. Const. amend. 74 to be dedicated to maintenance and operation ("M O") of a district's schools.[1]
The URT is a constitutionally mandated absolute minimum rate of taxation for M O. See Ops. Att'y Gen. Nos. 2009-056, 2004-359, 2004-134, 2003-065 and 2003-031 (opining that the URT is a mandatory state levy enacted by the voters in adopting Amendment 74).
Section 6-20-2305 of the Code (Supp. 2009), which sets forth the state's "foundation funding" formula for school districts, [2]
provides in pertinent part: *Page 4 
 (a)(1)(A) For each school year, each school district shall receive state foundation funding aid computed as the difference between the foundation funding amount pursuant to subdivision (a)(2) of this section and the sum of ninety-eight percent (98%) of the uniform rate of tax multiplied by the property assessment of the school district plus the miscellaneous funds of the school district.
 * * * (2)(B) For the 2010-2011 school year, the foundation funding amount is equal to six thousand twenty-three dollars ($6,023) multiplied by the school district's average daily membership for the previous school year.
Subsection (a)(1)(A) of this statute provides that each district's foundation funding aid[3] will be calculated by subtracting from the product of $6,023 times the district's average daily membership ("ADM") the product of 0.98 times the URT times the total assessed value of property within the district plus miscellaneous funds. Set forth as an equation, this calculation reads as follows: Foundation funding aid = ($6,023 * ADM) — ((0.98 * 0.025 * total assessed value) + miscellaneous funds). The diminuend in this calculation (the first parenthetical amount) represents the amount of foundation funding required to meet the constitutional guarantee of a general, suitable and efficient system of public education. Ark. Const. art. 14, § 1. The subtrahend (the second parenthetical amount) represents estimated proceeds (0.98 of the total due) generated by the URT supplemented by miscellaneous funds.[4] The difference represents the *Page 5 
amount that the legislature has determined must be provided a district by the state in order to meet the state's constitutional obligation to provide each public-school student an adequate education.
Built into this calculation is an assumption — which has proven to be unrealistic in practice — that a school district will, in fact, actually collect 98% of the amount owed by imposition of the URT. As the foregoing discussion should suggest, if actual collections fall short of this presumed 98% collection rate, the state will be obligated to make up any shortfall between actual collections and the constitutionally mandated minimum foundation funding amount.
In order to accommodate a situation in which actual collections diverge from the formula discussed above, the legislature enacted A.C.A. § 6-20-2305(a)(4) (Supp. 2009), which provides as follows:
 (A) By the end of each school fiscal year, for a school district whose net revenues[5] are less than the sum of ninety-eight percent (98%) of the uniform rate of tax multiplied by the property assessment of the school district, the Department of Education shall distribute to the school district the difference between:
 (i) The net revenues distributed to the school district as reported under § 26-26-2004[6] for the calendar year immediately preceding the current school year; and
 (ii) The sum of ninety-eight percent (98%) of the uniform rate of tax multiplied by the property assessment of the school district. *Page 6 
 (B) For a school district whose net revenues are more than the sum of ninety-eight percent (98%) of the uniform rate of tax multiplied by the property assessment of the school district, the Department of Education, under the authority of § 6-20-2306, shall recoup from the school district an amount equal to the difference between:
 (i) The net revenues of the school district; and
 (ii) The sum of ninety-eight percent (98%) of the uniform rate of tax multiplied by the property assessment of the school district.
Subsection (A) of the statute just quoted obligates the state to pay a school district the difference between 98% of the revenues that should have been realized in the preceding school year through collection of the URT and the lesser amount that was actually collected.[7] The statute does not address what should happen if 98% of the URT collections would not total the foundation funding amount. In that situation, I assume the formula set forth in A.C.A. § 6-20-2305(a)(1)(A) would apply to compel the state to fulfill its obligation to provide the full amount of foundation funding.
Subsection (B) of the statute just quoted entitles the state to recoup from a school district any net revenues that exceed 98% of collections due under the URT. "Net revenues" as defined in note 5, supra, could exceed 98% of URT revenues only if district revenues were enhanced by, say, the collection of delinquent taxes or an extraordinary collection rate exceeding 98%. Without opining as to the likelihood of this occurring, I will merely note that subsection (B) declares that the state is entitled to recoup this excess. Having reached this conclusion, I must add that Amendment 74 expressly declares that all proceeds of the URT must be distributed to the school districts as provided by law.[8]
In theory, then, the *Page 7 
proceeds of the URT in excess of the foundation funding amount may be expended by the state in a school district other than the one that gave rise to the tax proceeds. The only constitutional given is that these excess proceeds must be expended in a school district rather than be retained by the state. As a practical matter, this has proven to be an issue in only several relatively wealthy school districts.
Question 2: If a school district is guaranteed the sum of 98%of the uniform rate of tax multiplied by the property assessment: a)Does this guarantee extend beyond the foundation funding amountpursuant to A.C.A. 6-20-2305(a)(2) multiplied by theschool district's average daily membership for the previousschool year? b) For a school district in which the sum of 98% of theuniform rate of tax multiplied by the property assessment (with orwithout miscellaneous funds included) exceeds the per studentfoundation funding amount pursuant to A.C.A. 6-20-2305(a)(2), andhas therefore not received state foundation funding aid as computedpursuant to A.C.A. 6-20-2305(a)(1)(A), if the district's netrevenues exceed the sum of 98% of the uniform rate of tax multipliedby the property assessment, is the Arkansas Department of Educationentitled to recoup from the school district the difference betweenthe net revenues of the school district and the sum of 98% of theuniform rate of tax multiplied by the property assessment?
As I indicated in my response to your previous question, I believe the only guarantee in the Code is that a district will receive the foundation funding amount calculated pursuant to A.C.A. § 6-20-2305(a)(2)(B). I do not believe this guarantee extends beyond this calculated amount even if 98% of the product of the URT multiplied by a district's property assessments yields a higher figure. As noted above, A.C.A. § 6-20-2305(a)(4)(B) provides that if net revenues exceed 98% of the URT multiplied by a district's property assessments, the Department of Education will be entitled to recoup the difference between these two figures. As further noted above, the Department is obliged pursuant to Amendment 74 to distribute this difference to "the school districts"[9] — a coinage I interpret as meaning that the Department, while obliged to distribute this difference to one or more school districts, is not necessarily obliged to return it to the district that generated the funds. It remains the case, however, that any given district is *Page 8 
entitled to receive the foundation funding amount calculated pursuant to the formula set forth in subsection-2305(a)(2)(B). The state, then, is entitled to redistribute only that portion of net revenues in a given district that exceeds the foundation funding amount that the state owes that district.
Question 3: If A.C.A. 6-20-2305 guarantees that aschool district will receive the foundation funding amount pursuantto A.C.A. 6-20-2305(a)(2) multiplied by the average daily membershipfor the previous school year, is a school district required toreturn to the Arkansas Department of Education the local revenue inexcess of the foundation funding amount pursuantto A.C.A. 6-20-2305(a)(2) generated by the uniform rate of tax plusmiscellaneous funds?
As reflected in my discussion above, I believe the answer to this question is "yes."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
[1] Section 6-20-2303(25) of the Code (Supp. 2009) provides the following definition of the term "uniform rate of tax":
 "Uniform rate of tax" means a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, utility, and regulated carrier property in the state to be used solely for the maintenance and operation of the public schools as required by Arkansas Constitution, Article 14, § 3, as amended by Arkansas Constitution, Amendments 11, 40, and 74.
[2] The Code defines the term "foundation funding" as follows:
 "Foundation funding" means an amount of money specified by the General Assembly for each school year to be expended by school districts for the provision of an adequate education for each student[.]
A.C.A. § 6-2-2303(6) (Supp. 2009).
[3] The term "foundation funding aid" should not be confused with the term "foundation funding." The latter term denotes the entire amount the state is obliged to provide a district in order to ensure its students an adequate education. This amount includes, but is not limited to, state revenues realized through the URT. The difference between the constitutionally mandated "foundation funding" and these URT revenues as supplemented by "miscellaneous funds," see
discussion infra, constitutes the "aid" that the state must provide in order to meet its constitutional obligations.
[4] The term "miscellaneous funds" denotes the average of revenues over a 5-year period from such sources as federal funding and sales and use taxes devoted to education multiplied by the ratio of the URT to the district's total millage rate in the year preceding the current funding year. A.C.A. § 6-20-2303(11) (Supp. 2009).
[5] The term "net revenues" means "actual revenues generated from ad valorem taxes and distributed to a school district multiplied by the ratio derived from dividing the uniform rate of tax by the total millage rate of the school district."Id. at §-2303(13). The ratio in the multiplicand of this formula is clearly designed to reduce total property-tax revenues to an amount that reflects revenues actually realized from the URT.
[6] Despite this reference, the Code contains no section 26-26-2004.
[7] The statute is confusing in that it lists the subtrahend in this subtraction before the diminuend — i.e., the lesser figure before the greater — which would mean that the subtraction would result in a negative figure. If the net revenues collected from the URT are less than 98% of the amount due pursuant to the URT, as subsection (A) contemplates, then subtracting 98% of amounts due under the URT from net revenues will necessarily yield a negative number. Nevertheless, the legislature clearly intended that this amount, whether stated in the negative or positive, be paid to the district in compliance with Article 14, § 1.
[8] Ark. Const. art. 14, § 3(b)(3) ("[No portion of the revenues from the uniform rate of tax shall be retained by the state.").
[9] Id. ("[T]he net revenues from the uniform rate of tax shall be remitted to the State Treasurer and distributed to the school districts as provided by law."). *Page 1